UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERESA TOOMBS, individually and as independent administrator of and on behalf of the ESTATE OF CHAUNCEY ELMER TOOMBS, III and ESTATE OF CHAUNCEY EELMER TOOMBS, III's heir(s)-at-law and wrongful death beneficiaries; KATHRYN PETRINEC; TODD ANTHONY TOOMBS; and BRYAN WAYNE TOOMBS, | § § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-CV-0892-B |
| KAUFMAN COUNTY, TEXAS; and SOUTHERN HEALTH PARTNERS, INC., a/k/a SHP, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Kaufman County, Texas ("the County")'s Motion for Judgment on the Pleadings (Doc. 19). For the following reasons, the Court **GRANTS** Kaufman's Motion and **DISMISSES** Plaintiff's claims against the County **WITHOUT PREJUDICE**.

I.

BACKGROUND

This is a § 1983 case arising from the death of Chauncey Elmer Toombs, III. Toombs tragically committed suicide while detained in Kaufman County Jail ("the Jail"). Doc. 1, Compl., ¶ 46. Toombs was arrested at his home after he intentionally thrust his arm through a window, in

an attempt to harm himself. *Id.* ¶ 12. The arresting officer took Toombs for medical treatment and transported him to the Jail. *Id.*

At the Jail, officers completed a Screening Form for Suicide (the "Form"). *Id.* ¶ 13. The Form noted that Toombs may be at risk of suicide, that he was thinking of killing himself "any chance he can," that he had attempted suicide in the past, and that he felt hopeless. *Id.* The Form also noted that Toombs had been hospitalized for mental health problems in the past year and was diagnosed with PTSD, bipolar disorder, schizophrenia, depression, and anxiety. *Id.* The Form noted that Toombs showed signs of depression and displayed unusual behavior by "talk[ing] strangely." *Id.* The booking officers also performed a Continuity of Care Query ("CCQ"), which indicated that Toombs had received mental health treatment before and had been prescribed medications for mental health issues. *Id.* ¶ 14.

After his initial screening, Toombs was dressed in a suicide smock and given anti-depressants. *Id.* ¶ 13, The officers then placed Toombs in a suicide watch cell, where officers checked on him every 30 minutes. *Id.* ¶¶ 13, 15, 27. The cell contained a partial privacy partition, cameras, and a handrail. *Id.* ¶¶ 24, 38, 60. The Jail's medical staff allowed Toombs to keep medical gauze around the wound on his arm while he was in the cell. *Id.* ¶ 23. Eight minutes after the jailer last checked on him, Toombs committed suicide tying the medical gauze around his neck and affixing it to a handrail. *Id.* ¶ 15. A jailer arrived 18 minutes later and called for assistance. *Id.* But it was too late. Toombs died of strangulation. *Id.* ¶ 16.

Toombs's estate and family ("Plaintiffs") asserted claims against Defendants Kaufman County and Southern Health Partners, Inc. ("SHP"). Plaintiffs assert a § 1983 claim against the County, alleging that it violated Toombs's constitutional rights as a pretrial detainee to receive

reasonable medical and mental health care. *Id.* ¶ 70. The County filed a Motion for Judgment on the Pleadings, arguing that Plaintiffs failed to state claim for which relief can be granted. Doc. 19, Mot. J. Pleadings. The Court considers the Motion below.

## II.

## LEGAL STANDARD

A party may move for judgment on the pleadings after the pleadings are closed and when doing so would not delay the trial. FED. R. CIV. P. 12(c). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (*citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (internal quotations omitted). A Rule 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*,

550 U.S. at 556). But a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III.

## ANALYSIS

Plaintiffs did not plausibly allege a § 1983 violation. A municipality may not face liability based on its employees' actions under the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, municipalities face § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. A municipality may be held liable under § 1983 only when the enforcement of the municipal policy or practice was the "moving force" behind the violation of the plaintiff's federally protected right. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

A plaintiff must prove three elements to establish liability against a municipality: "[1] a policymaker; [2] an official policy; and [3] a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). The proper analysis of municipal liability under § 1983 "requires [a separation of] two different issues . . . (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

A pretrial detainee is entitled to certain Due Process rights, including the right to medical care, and the right to protection from suicide. *See Flores v. Cnty. of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997). A pretrial detainee may assert a constitutional violation either by alleging an

unconstitutional condition of confinement or unconstitutional episodic acts or omissions. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020). Plaintiffs' § 1983 claim invokes both as alternative theories for liability. Doc. 1, Compl., ¶ 47.

> An unconstitutional conditions theory asserts:
>
> that the County has imposed what amounts to punishment in advance of trial on pretrial detainees, and it requires no showing of specific intent on the part of the County. The 'episodic acts and omissions' theory, in contrast, requires a finding that particular jailers acted or failed to act with deliberate indifference to the detainee's needs.

*Sanchez v. Young Cnty.*, 866 F.3d 274, 279 (5th Cir. 2017).

Both claims require a plaintiff to allege that a "constitutional violation occurred" and "a municipal policy was the moving force behind the violation." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020). The Court considers both arguments below and finds that Toombs failed to plead a claim for relief under either theory.

A.   *Toombs Failed to Plausibly Allege an Unconstitutional Conditions Claim.*

For a conditions of confinement claim, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "To state such a claim, a plaintiff must plead facts that plausibly establish that (1) a condition (2) that is not reasonably related to a legitimate government objective (3) caused the constitutional violation." *Rangel v. Wellpath, LLC*, 2024 WL 1160913, at *13 (N.D. Tex. Mar. 18, 2024) (Hendrix, J.). "Prior conditions cases have concerned durable restraints or impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat." *Garza v. City of Donna*, 922 F.3d 626, 633–34 (5th Cir. 2019). In effect, the "alleged cause of the harm is the broader 'conditions, practices, rules, or restrictions'" in detention. *Cope v.*

*Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *9 (5th Cir. June 26, 2024) (quoting *Sanchez*, 956 F.3d at 791).

Plaintiffs do not plead facts that give rise to a conditions of confinement claim. Their theory centers around three alleged violations: (1) failure to provide necessary medical care, (2) failure to adequately monitor suicidal detainees, and (3) failure to control access to ligatures. *See* Doc. 1, Compl., ¶ 60.

### 1.    Medical Care

First, Plaintiffs did not plausibly allege that the County had an official policy of failing to provide necessary medical care. Plaintiffs allege that the County had a practice "of failing to address untreated mental illness as a medical emergency." *Id.* But the facts alleged in the Complaint suggest otherwise. When Toombs was booked into the Jail, officers completed a Screening Form for Suicide to assess whether Toombs was at risk of suicide and performed a CCQ to determine whether Toombs had previously received mental health treatment before and what medications he had been prescribed. *Id.* ¶¶ 13–14. *C.f. Young v. McLennan Cnty.*, No. 6:23-CV-00608-ADA-JCM, 2024 WL 4284507, at *4 (W.D. Tex. Apr. 25, 2024) (finding that plaintiffs alleged a conditions-of-confinement claim because they identified a policy of "being unable to review documents relevant to determining a detainee's risk of suicide"). Officers put Toombs in a suicide smock, ensured that he received anti-depressants, and placed him in a suicide watch cell where officers checked on him every 30 minutes. *Id.* ¶¶ 13, 15, 27, 30. After officers discovered that Toombs had hanged himself, they immediately requested assistance and cut the gauze from Toombs's neck. *Id.* ¶ 45. Nothing in the Complaint indicates that the Jail had a policy of denying detainees medical care for mental health emergencies.

2. <u>Monitoring</u>

Second, Plaintiffs failed to allege that the County had an official policy of inadequately monitoring suicidal detainees. Plaintiffs allege that the County's failure to monitor resulted from (1) failing to continuously monitor suicidal detainees, (2) failing to continuously monitor camera feeds, and (3) installing privacy partitions in suicide cells. Doc. 1, Compl., ¶ 60. Courts have not required continuous monitoring as a constitutionally required protocol for suicidal detainees. *See Estate of Salas v. Knox*, C.A. H-21-892, 2021WL 2659030 at *2 (S.D. Tex. May 26, 2021) ("[C]ontinuous monitoring . . . [is] among the protocols that are not constitutionally required for pre-trial detainees."); *Hetchler v. Rockwall Cnty.*, No. 3:08-CV-0551-B, 2009 WL 1160284, at *4 (N.D. Tex. Apr. 27, 2009) (Boyle, J.) ("Plaintiffs have cited no case which holds that a failure to maintain constant visual surveillance of a pretrial detainee determined to be a low to moderate suicide risk violates federal constitutional standards."). Next, Plaintiffs did not allege any facts to suggest that the County had an official policy or custom of not monitoring camera feeds. Instead, Plaintiffs make a conclusory allegation that "Defendants chose not to have employees monitor camera feeds," but they allege no facts to support this. *See* Doc. 1, Compl. ¶ 60. Lastly, privacy partitions cannot be said to have caused the alleged constitutional violation. *See Scott*, 114 F.3d at 53. Plaintiffs fail to allege how the privacy partition was a "moving force" in the suicide. *See Sanchez*, 956 F.3d at 791. Plaintiffs do not argue that the Jail would have been able to prevent the suicide had the partition not been there, nor do they allege that it prevented staff from observing the suicide. Thus, Plaintiffs have not alleged how a failure to monitor gives rise to unconstitutional conditions.

3.  Access to Ligatures

Third, Plaintiffs failed to plausibly allege that the County failed to control access to ligatures by allowing Toombs to keep medical gauze on his wound while he was in the suicide watch cell. *See* Doc. 1, Compl., ¶ 60. Allowing Toombs to keep gauze on his wound is "reasonably related to a legitimate, non-punitive governmental objective." *Scott*, 114 F.3d at 53. Toombs had suffered a significant cut after thrusting his arm through a window, and the medical staff allowed Toombs to keep the gauze on his arm after he was detained. Doc. 1, Compl., ¶¶ 12, 15. The government has not only an interest, but also a constitutional obligation, to provide medical care to pretrial detainees. *See Rhyne v. Henderson Cnty.*, 973 F.3d 386, 391 (5th Cir. 1992). Thus, allowing Toombs to keep dressing on his wounds is reasonably related to the government's interest in providing medical care.

Plaintiffs argue that the medical gauze was an "obvious ligature," but the Court disagrees. *See* Doc. 23, Resp., 13. Plaintiffs cite no instances where detainees have used medical gauze as a ligature before. Plaintiffs discuss a case where the plaintiffs alleged that "the County had a policy of providing pretrial detainees on low-risk suicide watch with a blanket and standard jail clothing which the County knows are used as ligatures in a room with numerous tie-off points without adequately monitoring the detainees." *Young*, 2024 WL 4284507, at *4; *see also* Doc. 23, Resp., 7–8. While blankets and standard jail clothing are widely known to be used as ligatures, the Court finds that medical gauze is not. Moreover, in *Young,* the plaintiffs cited to a *policy* of allowing detainees to bring blankets and clothes into suicide watch cells. 2024 WL 4284507, at *4. Here, Plaintiffs only cite to the singular instance where staff allowed Toombs to keep gauze on his wound, not to a policy. *See Brown v. Bolin*, 500 Fed. App'x 309, 314 (5th Cir. 2012) ("Existence of a constitutionally deficient

policy cannot be inferred from a single wrongful act."). As such, Plaintiffs failed to plead that the County had a policy of failing to control access to ligatures. The conditions of confinement claim fails.

B.  *Toombs Failed to Allege Episodic Acts.*

To state an episodic acts claim against the County, Plaintiffs must allege that (1) "County officials, acting with subjective deliberate indifference, violated [Toombs's] constitutional rights," and (2) "the County employees' acts resulted from a municipal policy or custom adopted with objective indifference to [Toombs's] constitutional rights." *Sanchez*, 866 F.3d at 280. A prison official acts with deliberate indifference only if "he knows that inmates face a substantial risk of serious bodily harm and . . . disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). When a plaintiff cannot allege that an individual showed "deliberate indifference," the claim fails even if the county had an unconstitutional policy. *See Piotrowski*, 237 F.3d at 582. Here, Plaintiffs did not allege that officers failed to take reasonable measures to mitigate the risk of suicide.

Allowing Toombs to keep medical gauze on his wound did not constitute deliberate indifference. Plaintiffs argue that "giving obvious ligatures to a detainee who is known to be at risk of suicide constitutes deliberate indifference." Doc. 23, Resp., 9. But the cases used to support their argument are distinguishable from the facts here. In all three cases, the ligature was a blanket. *See Sanchez v. Oliver*, 995 F.3d 461, 473 (5th Cir. 2021); *Bonnet-Pritchett v. Washington Cnty.*, No. 1:21-CV-149-RP, 2023 WL 8421180 at *2 (W.D. Tex. Dec. 4, 2023); *Young*, 2024 WL 4284507 at *5. Bedding is a "well-documented risk that has been frequently used in suicide attempts." *Cope v. Cogdill*, 3 F.4th 198, 211 (5th Cir. 2021). The facts here are more like those in *Cope*, where a detainee

used a telephone cord as a ligature. *Id.* at 210. There, the Fifth Circuit held that the officers did not act with deliberate indifference because they were not aware of the danger posed by a phone cord and there was no evidence suggesting that an inmate had previously attempted suicide with a phone cord. *Id.* at 210–11. Similarly, here, Plaintiffs do not allege that the officers knew the gauze could be used as a ligature or that there was a previous instance where an inmate used gauze in a suicide attempt. As such, Toombs failed to allege that the guards acted with deliberate indifference by allowing Toombs to keep gauze on his wound.

Plaintiffs also failed to allege that the officers acted with deliberate indifference in monitoring Toombs. The Fifth Circuit has held that continuous observation of suicidal detainees is not required. *See Estate of Salas*, 2021 WL 2659030, at *2. But courts have found deliberate indifference when officers were inattentive in monitoring detainees. For example, a court found deliberate indifference when an officer was watching television instead of monitoring the video of a detainee's cell. *Converse v. City of Kemah*, 961 F.3d 771, 778 (5th Cir. 2020). Another court found an officer acted with deliberate indifference by failing to check on a detainee for more than 45 minutes when the detainee was supposed to be checked on every 15 minutes could be characterized as deliberate indifference. *See Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 391, 397 (5th Cir. 2000). But here, Plaintiffs allege no facts that the officers failed to adhere to the monitoring guidelines they set for Toombs. After evaluating Toombs, an officer determined that he should be checked on every 30 minutes. Doc. 1, Compl., ¶ 30. And the Complaint alleges that officers did so. *Id.* ¶ 45. Plaintiffs allege that 30 minutes is the standard monitoring time in the Jail. *Id.* ¶ 30. They do not explain how the guards acted with deliberate indifference by adhering to the Jail's guideline.

As a result, Plaintiffs failed to allege that the officers acted with deliberate indifference in monitoring Toombs.

Given that Plaintiffs failed to allege that the officers acted with deliberate indifference, the Court need not consider whether Plaintiffs alleged that the officers' "acts resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights." *Sanchez*, 866 F.3d at 280. Because they failed to allege a conditions-of-confinement or an episodic acts claim, Plaintiffs failed to allege a § 1983 violation.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Kaufman County's Motion (Doc. 19). All claims against Kaufman County are hereby dismissed **WITHOUT PREJUDICE**. Should Plaintiffs choose to file an amended complaint they must do so on or before Tuesday, January 28, 2025.

**SO ORDERED**.

**SIGNED: January 7, 2025.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE